UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| ALBERTO CHAPA-GONZALEZ, | Case No. 20-10655 |
| Plaintiff, | Gershwin A. Drain |
| v. | United States District Judge |
| COMMISSIONER OF SOCIAL SECURITY, | Curtis Ivy, Jr. United States Magistrate Judge |
| Defendant. _____/ | |

**REPORT AND RECOMMENDATION**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (ECF Nos. 18, 19)**

Plaintiff Alberto Chapa-Gonzalez brings this action pursuant to 42 U.S.C. § 405(g), challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying his application for Disability Insurance Benefits ("DIB") under the Social Security Act. This matter is before the United States Magistrate Judge for a Report and Recommendation on Plaintiff's motion for summary judgment (ECF No. 18), the Commissioner's cross-motion for summary judgment (ECF No. 19), and the administrative record (ECF No. 11).

For the reasons that follow, it is **RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary judgment (ECF No. 18), **GRANT** the Commissioner's motion for summary judgment (ECF No. 19), and **AFFIRM** the Commissioner's decision.

I.   **DISCUSSION**

    A.   **Background and Administrative History**

Plaintiff is a United States Army veteran who completed two tours of duty in Iraq between 2006 and 2008. Plaintiff alleges his disability began on June 10, 2015, at the age of 29. (ECF No. 11-2, PageID.49). He filed an application for disability insurance benefits ("DIB") on January 8, 2019. (*Id.*). His date last insured is December 31, 2017. (*Id.* at PageID.51). In his disability report, he alleged two ailments which negatively impact his ability to work: post-traumatic stress disorder ("PTSD") and tinnitus. (ECF No. 11-6, PageID.212). His application was denied on May 7, 2019. (ECF No. 11-2, PageID.49).

Following the denial, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). On October 8, 2019, ALJ Timothy C. Scallen held a hearing, at which Plaintiff and a vocational expert ("VE") testified. (ECF No. 11-2, PageID.64-94). On October 29, 2019, ALJ Scallen issued an opinion, which determined that Plaintiff was not disabled within the meaning of the Social Security Act. (*Id.* at PageID.49-58).

Subsequently, Plaintiff submitted a request for review of the hearing decision. On January 10, 2020, the Appeals Council denied Plaintiff's request for review. (*Id.* at PageID.35-39). Thus, ALJ Scallen's decision became the Commissioner's final decision.

Plaintiff timely commenced the instant action on March 10, 2020.

**B.     The Administrative Decision**

Pursuant to 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4), at **Step 1** of the sequential evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity since June 10, 2015, the alleged onset date. (ECF No. 11-2, PageID.51). At **Step 2**, the ALJ found that Plaintiff had the following severe impairments: depressive disorder and post-traumatic stress disorder. (*Id.*). At **Step 3**, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (*Id.* at PageID.52). **Between Steps 3 and 4** of the sequential process, the ALJ evaluated Plaintiff's residual functional capacity ("RFC")[1] and determined that Plaintiff had the RFC:

> to perform a full range of work at all exertional levels, but with the following non-exertional limitations:
> - Simple, routine, and repetitive tasks;
> - Tasks requiring little judgment and learned in a short period;
> - Low stress environment where there are minimal changes in the workplace in terms of work procedures or responsibilities;
> - No interaction with the public; and
> - Only incidental interaction with co-workers.

---

[1] The claimant's "residual functional capacity" is an assessment of the most the claimant can do in a work setting despite his or her physical or mental limitations. 20 C.F.R. §§ 404.1545(a), 416.945(a); *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002).

(*Id.* at PageID.52-57). At **Step 4**, the ALJ determined that Plaintiff was unable to perform any past relevant work. (*Id.* at PageID.57). At **Step 5**, considering Plaintiff's age, education, work experience, and RFC, the ALJ determined there were existing jobs in significant numbers within the national economy that Plaintiff could perform, such as machine tender and packager. (*Id.* at PageID.57-58). Therefore, the ALJ concluded that Plaintiff had not been under a disability, as defined in the Social Security Act, from June 10, 2015, the alleged onset date, through December 31, 2017, the date last insured. (*Id.* at PageID.58).

    **C.**    **Framework for Disability Determinations**

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; (4) can return to past relevant work; and (5) if not, whether he or she can perform

other work in the national economy. 20 C.F.R. §§ 404.1520, 416.920.[2] The Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services*, 735 F.2d 962, 964 (6th Cir. 1984).

### D. Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. at 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. at 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241

---

[2] Citations to the regulations or Social Security Rulings are to those effective on the date of the application for disability benefits or the ALJ's decision, where appropriate, unless indicated otherwise.

(quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)). In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

  E.  **Analysis**

Plaintiff raises three arguments on appeal: (1) the ALJ should have found Plaintiff's tinnitus to be a severe impairment at Step Two, (2) the ALJ did not discuss the Veterans Agency Rating Decision, which gave Plaintiff a "100% disability" rating, in accordance with SSR 06-03p, and (3) the ALJ fashioned an erroneous RFC which failed to include limitations caused by Plaintiff's tinnitus. (ECF No. 18). In response, the Commissioner asserts (1) the ALJ's Step Two and RFC determination are supported by substantial evidence, and (2) SSR 06-03p was rescinded and thus the ALJ was not required to discuss the VA Rating Decision.

1. Consideration of Tinnitus at Step Two and in the RFC

At Step Two, the ALJ found Plaintiff's depressive disorder and post-traumatic stress disorder severe. The ALJ concluded all other impairments were either non-severe or not medically determinable. (ECF No. 11-2, PageID.51).

At the second step of the sequential analysis, an ALJ must determine a claimant's "severe" impairments. A severe impairment is one which significantly limits an individual's ability to perform basic work activities. 20 C.F.R. § 404.1520(c). An impairment is considered non-severe only if it is a "slight abnormality that minimally affects work ability regardless of age, education, and experience." *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988). The Sixth Circuit has characterized this as a "*de minimis* hurdle in the disability determination process." *Id.*

As an initial matter, it is not clear whether the ALJ determined Plaintiff's tinnitus is a non-severe impairment or not a medically determinable impairment. Plaintiff assumes the ALJ found the impairment non-severe, and the Commissioner does not challenge this. As a result, the undersigned will address the impairment as a non-severe impairment as well.

Upon review of the medical evidence, which the ALJ cited in his discussion of Plaintiff's other impairments, the ALJ's decision not to include tinnitus as a severe impairment is supported by substantial evidence. As demonstrated below, the medical records regarding Plaintiff's tinnitus are rather benign.

In July 2013, an audiologist at the Veterans Affairs Medical Center ("VAMC") diagnosed Plaintiff with right ear sensorineural hearing loss and noted Plaintiff's report of recurrent tinnitus. (ECF No. 11-8, PageID.524-26). Notably, the audiologist concluded neither issue would impact "ordinary conditions of daily life, including ability to work." (*Id.* at PageID.526, 527).

Plaintiff's chief complaint during a January 13, 2015 visit with an audiologist at the VAMC was tinnitus and occasional difficulty with sharp noise. Plaintiff described the condition as a "periodic, daily occurrence" and as "high pitched, ringing." (ECF No. 11-7, PageID.465). The audiologist conducted testing which revealed "normal hearing sensitivity" and "excellent" speech recognition in both ears. (*Id.* at PageID.466). Following testing, the audiologist counseled

8

Plaintiff on hearing aids, hearing protection in noise, and making social adjustments.  (*Id.*).

In June 2015, Plaintiff underwent a review for a VA PTSD disability benefits questionnaire.  In the "Relevant Occupational and Educational History" section, the reviewer noted Plaintiff was kicked out of his community college English class.  Apparently, Plaintiff's tinnitus interfered with his ability to concentrate.  To compensate for his tinnitus, Plaintiff placed a plug in his right ear, however, he eventually started taking online classes to avoid people and further distractions.  (*Id.* at PageID.443-44).

Plaintiff told audiologists and others connected with the VA about the issues caused by his tinnitus.  In February 2015, Plaintiff reported "loud noises, big crowds, when people raise their voice at me, driving, arguing" were triggers for him, and the ringing in his ears added to his frustration.  (ECF No. 11-9, PageID.831).  In March 2016, Plaintiff reported his grades in school were poor.  Part of his "struggles in class resulted in him having to sit in the front row due to tinnitus, however, [Plaintiff] was constantly distracted by movement behind him related to PTSD."  (ECF No. 11-7, PageID.348).  On November 22, 2017, Plaintiff reported the ringing in his ears was "acting up" and affecting his "mood in a negative way."  (ECF No. 11-9, PageID.692).  On that date in November, his mood and mental status were noted as normal.

9

At the administrative hearing, Plaintiff and the ALJ discussed Plaintiff's tinnitus. Plaintiff testified he has constant ringing in his ears. Because of this, he preferred to sit in the front of his classes, but his PTSD would cause him to feel upset or he became distracted by people sitting behind him. To mitigate Plaintiff's problems, the school provided a notetaker which allowed him to sit in the rear of the class. (ECF No. 11-2, PageID.84-85). However, Plaintiff was unable to hear as well. (*Id.*). He further testified loud noises affect him, but he did not describe in which manner. (*Id.* at PageID.85-86).

In sum, Plaintiff characterized his tinnitus as an issue that increases his frustrations associated with PTSD and he preferred to sit in the front row of his classroom to aid his ability to concentrate. Notably absent from Plaintiff's testimony and the record is any indication his tinnitus caused any difficulties with performing tasks at work (when Plaintiff worked). On the contrary, the audiologist who first noted tinnitus also determined the issue did not impact his ability to work. (ECF No. 11-8, PageID.526, 527). Moreover, objective testing on Plaintiff's hearing capability revealed "excellent" speech recognition in both ears. The ALJ's conclusion that Plaintiff's tinnitus amounts to, at most, a non-severe impairment, or a "slight abnormality that minimally affects work ability," *Higgs*, 880 F.2d at 862, is supported by substantial evidence. Accordingly, the undersigned finds no error in the ALJ's Step Two determination.

Likewise, the evidence does not suggest the RFC should include a limitation to account for tinnitus. The evidence—which appears to be based exclusively on Plaintiff's subjective reports—demonstrates tinnitus causes some frustration for Plaintiff and impacts his ability to hear in the classroom, but does not adversely impact him in a work setting. Plaintiff's audiologist went so far as to state the tinnitus did not interfere with his ability to work. Prior to filing his application for disability benefits, Plaintiff worked at Rent-A-Center, where he spent most of his time on the telephone interacting with customers. (ECF No. 11-2, PageID.66-67). Plaintiff testified he has not been able to work since that job because of social anxiety; he did not provide testimony related to any difficulty with his hearing.

Further, it appears the RFC does account for tinnitus. Plaintiff reported problems hearing in crowds, at distances, and trouble concentrating. The ALJ limited Plaintiff to work without any interaction with the public, only incidental interaction with co-workers, and involving only simple, routine, and repetitive tasks. (*Id.* at PageID.52-53). Thus, the RFC contemplated Plaintiff's concentration issues. In addition, the vocational expert indicated the jobs that could be performed by a claimant with the same RFC and characteristics as Plaintiff did not involve "loud noises like at the jackhammer level." (*Id.* at PageID.91). In other words, in the RFC and at Step Five, the ALJ limited Plaintiff to work performed alone and without loud noises. This would appear to

adequately account for Plaintiff's tinnitus. The lack of express limitations in the RFC to specifically account for tinnitus is supported by substantial evidence.

Importantly, moreover, Plaintiff failed to suggest what limitation should have been included. "[T]he mere fact that [he] suffers from certain conditions or carries certain diagnoses does not necessarily equate to disability or a particular RFC. Rather, a claimant must also prove its severity and functional impact." *Bruner v. Comm'r of Soc. Sec.*, 2016 WL 6080214, at *10 (E.D. Mich. Feb. 18, 2016), *report and recommendation adopted*, 2016 WL 1056086 (E.D. Mich. Mar. 17, 2016) (citing *Foster v. Bowen*, 853 F.2d 483, 489 (6th Cir. 1988)). Instead of proving the functional impact of his tinnitus, Plaintiff pointed to the medical records with notations regarding his tinnitus, such as having trouble hearing at the back of the classroom. This does not meet his burden and the Court cannot reweigh the evidence to determine if a different RFC would have been appropriate.

While the Court must "take into account whatever in the record fairly detracts from [the] weight" of the Commissioner's decision, *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)), "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273

12

(6th Cir. 1997)). Ultimately, the ALJ's decision "cannot be overturned if substantial evidence, or even a preponderance of the evidence, supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).

Additionally, Plaintiff makes a passing reference to the lack of consideration of his impairments in combination. In the final paragraph of his Step Two argument, Plaintiff asserts because tinnitus was considered non-severe, "the ALJ clearly did not consider these impairments when reviewing how they would impact" Plaintiff. He states, "The ALJ did not have substantial evidence to have ignored the combination of the claimant's impairments; further, it was error for him to do so." (ECF No. 18, PageID.878). Plaintiff's mere reference to a failure to consider his impairments in combination in the most perfunctory way leaves it for the Court to develop the argument and find factual and legal support for it. Plaintiff did not explain how the ALJ failed to consider the effects of his impairments in combination or state how a combination of his impairments would change the RFC or ultimate determination of disability. The remainder of the brief, with regard to tinnitus, is devoted to his argument that the tinnitus is severe and the RFC should include a limitation to account for it. He pointed to no evidence in the record suggesting what functional limitations should have been

considered given the combination of impairments.  The Sixth Circuit "has consistently held . . . arguments adverted to in only a perfunctory manner[] are waived."  *Kuhn v. Washtenaw Cnty.*, 709 F.3d 612, 624 (6th Cir. 2013) (citing *Caudill v. Hollan*, 431 F.3d 900, 915 n. 13 (6th Cir. 2005)); *Crocker v. Comm'r of Soc. Sec.*, 2010 WL 882831 at *6 (W.D. Mich. 2010) ("This court need not make the lawyer's case by scouring the party's various submissions to piece together appropriate arguments.").  "Given that this argument is merely a conclusory assertion," *Gillaspie v. Berryhill*, 2018 WL 3377086, at *6 (W.D. Ky. July 11, 2018), the argument is waived.

Even *assuming arguendo* that the consideration of Plaintiff's impairments in combination argument is not waived, remand is still not appropriate because there is no medical evidence on the functional impact of tinnitus—either alone or in combination with other impairments—to consider.  The ALJ was not permitted to "play doctor" and assess the functional impact of Plaintiff's tinnitus where there was no objective medical evidence suggesting any limitations.  *See Klump v. Colvin*, 2016 WL 2747143, at *4 (E.D. Mich. Apr. 26, 2016), *report and recommendation adopted sub nom. Klump v. Comm'r of Soc. Sec.*, 2016 WL 2986366 (E.D. Mich. May 24, 2016) ("When determining a claimant's RFC, ALJs must not succumb to the temptation to play doctor and make their own independent medical findings.") (quotation omitted); *see also Hill v. Comm'r of Soc. Sec.*, 560

F. App'x 547, 551 (6th Cir. 2014) ("[D]isability is determined by the functional limitations imposed by a condition, not the mere diagnosis of it."). The only mention of functional limitations in the record is from the VAMC audiologist who specifically noted Plaintiff's hearing issues had no impact on his ability to work. There is no medical evidence on which to conclude the RFC fails to account for all of Plaintiff's impairments. The only example of the combined effect of his impairments given in the record and at the hearing is the issue related to the classroom discussed hereinabove. Preferring to sit in the front of a classroom is not a workplace functional limitation. Given the lack of a medical opinion concerning functional limitations caused by the impairment or the combination of tinnitus and PTSD, the ALJ could not reach a different decision. The RFC is supported by substantial evidence and should not be remanded for further consideration.

Similarly, Plaintiff asserts he should have been found disabled because a staff psychiatrist at the VA opined in March 2016 Plaintiff had "panic attacks more than once a week" and had "difficulty in adapting to stressful circumstances" in a work setting. (ECF No. 11-7, PageID.354). Plaintiff notes the VE in this matter testified if Plaintiff were off task more than 10% of the workday, all jobs would be precluded. The VE also testified it is possible that what is regarded as "low stress" for one person could be "high stress" for another. (ECF No. 18, PageID.886). To

15

the extent Plaintiff is advancing the argument the ALJ should have found that Plaintiff would be off task more than 10% of the workday and that work considered "low stress" would actually be highly stressful for Plaintiff based on the assessment conducted by the VA psychiatrist, the argument is waived as well. Plaintiff alluded to the argument in a perfunctory and undeveloped manner. Moreover, substantial evidence supports the RFC decision with regard to panic attacks and stressful environments.  First, the RFC limited available jobs to low stress jobs "where there are minimal changes in the workplace in terms of work procedures or responsibilities." (ECF No. 11-2, PageID.52-53).  This restriction appears to adequately account for Plaintiff's panic attacks and stress intolerance. Second, the ALJ acknowledged the fact that Plaintiff experienced panic attacks, but also noted Plaintiff remained enrolled in college while juggling caring for his son and looking for employment opportunities.  Further, among other things, the ALJ noted Plaintiff's mental status was stable and consistently normal by the end of 2016 and through 2017.  (*Id.* at PageID.54-55).  The RFC is supported by substantial evidence.

  2. <u>Consideration of VA Rating Decision</u>

Replying in part on SSR 06-03p, Plaintiff argues the case should be remanded because the ALJ did not consider, or even mention, the VA Rating Decision which awarded Plaintiff a 100% disability rating.  The VA decision was

based on Plaintiff's PTSD. (*See* ECF No. 11-5, PageID.205-06). SSR 06-03p makes clear that while the ALJ is ultimately responsible for determining whether a claimant is disabled, "a disability decision by another governmental or nongovernmental agency cannot be ignored and must be considered." SSR 06-03p, 2006 WL 2329939, *6 (Aug. 9, 2006).

On January 18, 2017, however, the Social Security Administration amended 20 C.F.R. § 404.1504, which governs the consideration of decisions by other governmental agencies and nongovernmental entities. The revised Rule provides:

> Other governmental agencies and nongovernmental entities—such as the Department of Veterans Affairs, the Department of Defense, the Department of Labor, the Office of Personnel Management, State agencies, and private insurers—make disability, blindness, employability, Medicaid, workers' compensation, and other benefits decisions for their own programs using their own rules. Because a decision by any other governmental agency or a nongovernmental entity about whether you are disabled, blind, employable, or entitled to any benefits is based on its rules, it is not binding on us and is not our decision about whether you are blind or disabled under our rules. **Therefore, in claims filed (see § 404.614) on or after March 27, 2017, we will not provide any analysis in our determination or decision about a decision made by any other governmental agency or a nongovernmental entity about whether you are disabled**, blind, employable, or entitled to any benefits. However, we will consider all of the supporting evidence underlying the other governmental agency or nongovernmental entity's decision that we receive as evidence in your claim in accordance with § 404.1513(a)(1) through (4).

20 C.F.R. § 404.1504 (emphasis added).

Also effective March 27, 2017, the Social Security Administration rescinded SSR 06-03p. SSR 96-2p, Rescission of Social Security Rulings 96-2p, 96-5p, and 06-3p, 2017 WL 3928298 (Mar. 27, 2017).

Plaintiff filed his claim on January 8, 2019 (ECF No. 11-5, PageID.181-82), well after March 27, 2017, the effective date of 20 C.F.R. § 404.1504. At the time Plaintiff filed his application, the ALJ was no longer obligated to provide any analysis of the VA Rating Decision in his hearing decision. He was, however, still required to consider all the supporting evidence underlying the VA's decision. The ALJ met his obligation. The ALJ's RFC analysis contains discussion of and numerous citations to the medical records found in Exhibits 1F-3F of the administrative record, the only medical records provided. (ECF No. 11-2, PageID.53-57). These medical records are from the VA Medical Center. Those records dated on and before the date of the VA Rating Decision (April 14, 2016) were likely the records underlying the Rating Decision. There is no error in the ALJ's treatment of the VA Rating Decision.

### G. Conclusion

Plaintiff has the burden of proof on his statements of error. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). Plaintiff has not shown legal error that would upend the ALJ's decision. For the foregoing reasons, it is

**RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary judgment (ECF No. 18), **GRANT** Defendant's motion for summary judgment (ECF No. 19), and **AFFIRM** the Commissioner of Social Security's decision.

## II.  PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2), Local Rule 72.1(d).

The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date:  April 20, 2021              s/Curtis Ivy, Jr.
                                   Curtis Ivy, Jr.
                                   United States Magistrate Judge